Good morning. May it please the court and counsel, my name is Rafael Rodriguez. I represent Mr. Delpriore on his appeal for misconviction on drug and firearms charges in the District of Alaska, and more particularly the denial of his motion to suppress below in the District Court. There is a thicket of case law on the issue of search and seizure, and very little else in criminal law is driven so much by the facts in a particular case. And here we have a specific fact pattern which clearly supports suppression of the evidence by the Anchorage Police Department, which formed the basis of the Federal prosecution. Let me ask you this question. Is it a situation where we should be viewing this as a traffic stop that segued into a situation which gave rise to a probable cause for the arrest, or should we view this as simply a probable cause to arrest for the initial attempted misdemeanor? Well, I think the facts are that the officers arrived at the scene based on a complaint that had nothing to do with any type of motor vehicle violation. They came to the scene because there was a complaint about a— Well, but at this point in time, I'm not necessarily focusing on the facts per se, but it's focusing on the approach. Right. And one of the officers, I think it was Officer Prager, testified that as he was approaching the vehicle, he didn't see a front license plate on the defendant's car. But I think it's important for the court to see this brutality of what's going on here. This is a six-minute event from the moment the officers arrived until Mr. Del Perari is taken out of the vehicle. When they arrived on the scene, Officer Wallace, who was in his squad car, made mention of the fact that a truck was reported stolen and communicated that to Officer Prager. Both officers, acting in concert, moved forward to arrest or to at least detain Mr. Del Perari solely on vehicle theft. Intent doesn't make any difference for purposes of this analysis, does it? It's, you know, the objective knowledge of, you know, what is perceived at that point in time, which you've already conceded was the presence or the lack of the front license plate. Well, yes, but that's another issue altogether because there's an issue as to whether or not it was even a misdemeanor to begin with. Officer Prager indicated it was not an arrestable offense under the— I take it your position is it doesn't make any difference whether or not we approach it as a traffic stop that goes on or whether or not we view it as an arrest at that point in time for the fact that he lacks the front license plate. Only to the extent that the officer's actions have to be assessed under the reasonableness of what they did as a result of a minor traffic offense. But, Counsel, assuming for a minute that the failure to have the front license plate was a misdemeanor under Alaska law in 2018, how do you get around Virginia versus Moore in terms of the probable cause in this case or reasonable suspicion at the least? Well, first of all, we start off with the district court's finding that there was no reasonable suspicion in this case to detain Mr. Del Priore. There was no what? There was no reasonable suspicion to detain Mr. Del Priore. What the district court found was that there was probable cause as a result of the license plate. Well, that's what I'm saying. Right. But in Virginia versus Moore, the defendant in that case was actually arrested for a traffic offense. In this case, there was no such arrest. There was no such detention. There was no citation. There was none of that thing, none of those things. What happened was it wasn't even mentioned in the rendition of facts in the search warrant that the officers later asked the court to sign off on. Isn't the fact that an officer observed the lack of the front license plate, that in itself is sufficient for the arrest, wasn't it? Well, yes. I don't understand what you're talking about there. Because his testimony was as he's approaching, he didn't see it, not that it didn't exist, number one. No, he said he saw it. One of the officers said he didn't notice, but the other officer, Smalls said he didn't notice it, but the other officer, I forget his name now, affirmatively said as he approached, he saw that it was missing a front license plate, also with the tinted windows, et cetera. Right. But there was no, well, as far as the tinted windows, the district court found that there was no reasonable suspicion because the officer was not. I understand that. Right. It was not credible because the other two officers clearly saw the defendant inside his vehicle. So insofar as the license plate, he mentioned he had an observation of that, but that was not what this person was detained on nor arrested for at all. All of the cases cited by the government, including Moore, included actual detention or arrest for a traffic violation. That did not occur in this case. That did not occur. But in other words, you're saying that if the officer observes a basis for the arrest, but ultimately the person's not arrested on that basis, that you ignore that? No. I'm suggesting that it's an after-the-fact justification for the detention. After-the-fact justification is fine, according to the Supreme Court, as long as the original basis for the arrest is present.  And that goes back to whether or not it was, in fact, a misdemeanor or an infraction. It was clearly a misdemeanor. Whether or not they enforce it is another matter. Well, that may be true, but the Alaska Supreme Court has issued the Uniform Motor Vehicle Booklet, which lists it as an infraction. But that was later, was it not? I'm sorry? Wasn't that after 2018? No, that particular, I think it's called the UMOT, has been around for several years, even before 2018. So I thought you earlier agreed that the failure to have the front license plate was, in fact, an arrestable offense under Alaska law in 2018. Is that wrong? That's what the district court found. That it was okay? That it was an arrestable offense because of the statute has to be read in conjunction with another statute. But there's another statute which allows for ordinances by the cities that are not in conformity with that statute that can classify it as an infraction. And Officer Pregler testified to that. He says it's not an arrestable offense. He says he knew that because the Anchorage ordinance indicated there was an infraction. So I think it's an — I think my other point is that if there is confusion as to the state of the law, the rule of lenity goes toward in favor of the defendant. I don't think it's a question of confusion. I don't see — what is confused? Confusion as to whether it was a misdemeanor or an infraction. No, it's clearly a misdemeanor. It's defined as a misdemeanor. Now, I agree with you that the Alaska Supreme Court may have said, you know, you don't have to arrest for it, but it's still a misdemeanor. And under the Alaska statute, a misdemeanor is treated as a misdemeanor.  It's a misdemeanor. Now, the way that the law enforcement and the Alaska Supreme Court treats it may be something else, but at least on the books, it's still a misdemeanor. I think the Court should also take into consideration the Knowles v. Iowa decision. In that case, an officer cited the person for a citation, which he could have also arrested the person for the speeding violation. He didn't do so. And the Supreme Court says that you're not entitled to search by infraction, by the citation, only by an arrest. In this case, the fact that the officer could have arrested Mr. Del Perore for a misdemeanor and did not is something this Court should take into account, because he arrested within one minute of the officer's arrival for Grand Theft Auto and the investigation of the theft. He wasn't arrested for Grand Theft Auto. He was arrested for resisting the officer. Well, that was after he was refusing to get out of the car. That was before he was arrested. Right. And that was my question. Why isn't there a reasonable suspicion for that theft, for the Grand Theft Auto, and then you're allowed to stop, and then if you refuse to stop, then you're allowed to be arrested? Well, because all the basis for finding that he was somehow – there was reasonable basis to arrest him for theft was to his proximity to the truck. And the district court found that's not a basis to arrest anybody. Well, why not? I mean, so there was a call saying suspicious activity in the parking lot, like painting of some sort. Framing. Right, and noise. And then they see a car that's been stolen, and your client is the only person in close proximity to that stolen vehicle. So why shouldn't – why isn't that enough suspicion to stop the officer – for the officer to stop and say, hey, what's going on here? Well, they couldn't ask a person anything they want. An officer – a person doesn't have a – Oh, but if you have reasonable suspicion, you could stop briefly to ask the question. If they refuse, then that's against the law. I think the district court was actually correct on this when they said there was no suspicion that he was involved in a grand theft because he was simply parked near the car. That was the extent of it. There was nothing in the call identifying the Mustang. Well, no. And coupled with the 911 call, though. Yeah, but there was nothing in the call that identified the Mustang, that identified the defendant, that identified anything having to do between the shop shop and the  So in other words, the tip was not corroborated in any way, shape, or form as to Mr. Del Priori. His – the only position that Mr. Del Priori had was he was parked perpendicular to the truck, as there were a lot of other cars parked around the truck. Was there any other individuals near the car? There were some persons I think were walking in the neighborhood, but there was no – the vehicle in question was Mr. Del Priori, who was actually bumped by Officer Wallace and trapped. When you say perpendicular, they're parked like this, like a T? Yes. Isn't that odd in itself? Why would – who parks like that? Well, because he was in the parking lot and the truck was on the street. And so he was moving back to get out, and that's when the officer went and moved up against him bumper to bumper, actually caused damage to the bumper and pushed – and basically followed him back to a fence where he was not free to go at that point. And that's where the district court says – I think you're exaggerating the video. I'm sorry? I think you're exaggerating the video. That's what the district court found. Wow. But the video was presented as evidence. Right. But I think even Officer Wallace agreed in his testimony that that's what he did. He followed the car as it moved back and hit the fence. That was the testimony of Officer Wallace. Let me ask you, if our view of the video differs from Officer Wallace's testimony, how do you think we should treat it? I think the court should consider all the evidence presented. I understand that, but how we should treat it? In other words, should we rely on our own eyes what we see in the video? Well, the district court saw the same video, and the district court made a finding. So the court would have to make clear error. We're reviewing what the district court did, which is view the video. And so the court would have to make a decision that the district court committed clear error when it made a factual finding that there was – that the officer was pinning this citizen against a fence and not allowing that person to leave. Okay. Counsel, you've used up your time. I'll see after we hear the government whether my colleague has additional questions.  Thank you. Thank you for your argument. I appreciate it. Let's hear from the government, please. Mr. – is it Brickley? Is that correct? Brickley, Your Honor. No L. Very well. May it please the Court. Seth Brickley on behalf of the Appellee of the United States. There are two inquiries central to the Court's consideration of this case. First, whether the initial stop of Mr. Del Priore was supported by reasonable suspicion. You're saying originally it was just simply a traffic stop and then it segued into something that gave rise to probable cause for the arrest? I'm saying – yes, Your Honor. The facts known to the officers at the time of the approach of Mr. Del Priore's vehicle justified a traffic stop. Could simply viewing the Mustang without the front license plate while the front license – while the Mustang was attempting to drive off the private parking lot, would that in itself have been a basis for arresting? Yes. Yes. A definite answer. And that's because, as Your Honor pointed out, the Alaska State statute identifies failure to display that front license plate as a misdemeanor and also an attempt to drive on a public roadway without that front license plate is also classified as a misdemeanor. So from the government's perspective, there's just no question, Alaska Supreme Court or other rules to the contrary, that in 2018, failure to have that front license plate was a misdemeanor and you could arrest someone for that purpose. Is that right? Yes, Your Honor. Okay. Now, of course, should the Court find that there was a basis to stop Mr. Del Priore ab initio, whether it be for an equipment violation such as the tinted windows? And I would note that the district court did not make the finding that there was no reasonable suspicion that the windows weren't tinted. I don't think – Well, but there was conflicting testimony by one of the arriving officers that you could see through the windows and therefore, you know, the question was a question of tinting. Although I guess there was another officer who did an examination of the windows itself. Correct. And found it was sufficiently tinted. Correct. And I would like to – I don't think that testimony is directly contradictory because as Officer Hughes, that's the officer who arrived later on scene and said that he could see Mr. Del Priore through the window, he testified that he was standing in front of the car. Officer Progler was approaching from the side. What about the defense argument that the amount of force that was used was outrageous? I think the amount of force that was used during the course of the stop was measured and only escalated as the defendant's refusals escalated. The initial use of force, which was the blocking in of Mr. Del Priore's vehicle, was justified because, again, operating a two-ton vehicle, trying to move to a roadway, requires some sort of intercession. And the defendant actually said he was moving forward. He wanted to get out. Isn't that correct? Yes, Your Honor. Okay. And then when the defendant moved back as if to maneuver around the officer, again, you had an exposed officer outside of a vehicle nearby. Let me ask you, when you viewed the vehicle, how many backwards and forward motions were there by the defense stand? There was the initial forward motion. Then Officer Wallace posted his patrol vehicle in front of Mr. Del Priore, which then prompted him to move backwards. Officer Wallace moved forward some more. Mr. Del Priore moved backwards again. And ultimately, Officer Wallace put his bumper against Mr. Del Priore's bumper. Okay. So there were three movements by the Mustang. I believe there were three movements, Your Honor. As you know, the defendant claims outrageous conduct. I gather from what you just said, you're saying, no, everything was proportionate to what was happening at that time. Is that right? Yes, Your Honor. Every move that the officers made was in response, in a measured response to Mr. Del Priore's refusals and or furtive movements. Your Honor. Sorry, nobody's relying on the amount that could be seen through the Mustang's window even prior to the arrest of the defendant. Is that correct? Nobody's relying on what you could see through the windows of the Mustang, right? Other than his furtive movements. Correct. Okay. So we don't have to deal with that? No. Okay. I want to follow up on what my colleague asked before. I've had other cases where this situation has come up, but I mentioned the government's perspective. The district court saw the videos and formed an opinion, which is recorded in the judgment. We can look at the same videos. If we view the videos and come to an entirely different conclusion than the district court did, is that part of our review for clear error? Is that the way it works from your perspective? I think so, Your Honor. The video is evidence that was before the district court. The district court made factual determinations based on that video as well as other testimony. Those factual determinations are reviewed for clear error. So our reviewing of the video coming to a contrary conclusion, arguendo, is our review for clear error, and if we disagree, then it's clear error on the part of the district court. Is that correct? I believe it is, Your Honor. Your Honor, unless the court has further questions for the government. Other questions? Just a question. Do you stand by the initial magistrate's determination that there was a reasonable suspicion for the grand theft or the car theft? And the specific facts known to officers at that time, I think, justified that finding. They had that call from, it wasn't an anonymous source. It was an identified individual identifying herself as a neighbor, describing activities that were consistent with the officers. None of the details in the call were present at the time the officers arrived at the scene. So, therefore, it's just a totally unsubstantiated call. Excuse me, Your Honor? There was nothing that was said that gave rise to, I suppose, the suspicion that was the basis for the call was present at the time the officers arrived. There was no paint spraying. There was no dog running around. There was no people milling about, et cetera. None of that was there. So I don't understand how you could say that somehow the fact that there was a phone call about some sort of suspicious activity stemming from the painting of a car in a private parking lot, I don't understand what the basis is that gives rise to any sort of reason for stopping. Certainly the phone call alone, I don't think, would have been enough. Okay. Then what was it? The facts that officers observed when they arrived on scene against the context. What did they observe? They observed a stolen vehicle. Yeah. Okay. But that was a truck, not the Mustang. There was a immediately next to the stolen vehicle was a vehicle with a missing license plate, which arguably is consistent with someone trying to- In other words, the stationary stolen vehicle of a car with a missing front license plate, which is not an arrestable offense per se, is sufficient to give rise to probable cause. No. I think the list goes on. Or even reasonable suspicion. The list goes on. It's not just the missing license plate. It's the tinted windows. And then it's the furtive behavior of the driver of that vehicle as uniformed officers approach. All of those facts, I think, give rise to reasonable suspicion that that vehicle itself, the Mustang, is a stolen vehicle or the operator of that vehicle is associated. I thought the officer ran the plates of all the vehicles that were observable, including- Well, actually, obviously you're right because it couldn't have been the Mustang because the front license plate wasn't visible. Correct. Okay. And then the question I have, it seems like between the time of the 911 call and before getting to the parking lot, the officers already had an impression that it would be a chop shop. Is that correct? That's what the officers testified. What was the basis of that? I think the content of the call, the spray painting of vehicles, the drug activity, people accessing it all hours of the morning, I think officers formed that possibility of stolen vehicle activity based on their training and experience. But again, there was no evidence of that there. No, there wasn't an active spray painting situation. Or no dogs? No. There were no people? But what was the time difference between the call and officers arriving? Your Honor, I don't recall off the top of my head. About an hour, wasn't it? I can't remember, Your Honor. Let me ask you, was there any evidence that this was an area of high crime? It was a high crime area? There was no testimony from the officers that this was a high crime area. Other questions about my call? Okay. Thank you, Your Honor. Very well. Now, Mr. Rodriguez didn't reserve any time, but let me ask my colleagues whether anybody has additional questions for Mr. Rodriguez. I should give him one minute to see if he has anything else he wants to add. My colleague wants to give you an extra minute, so we're going to defer to our district court colleague. I always feel it's like tennis. Please, you've got a minute. Thank you very much. I just want to address the outrageous conduct. If we accept the government's position that this was a minor traffic offense, think of what happened. He was surrounded by six officers whose guns were drawn on the Mustang, according to Officer Hughes. He was yelled at and told to come out of the car. He was threatened with a baton to break the window of the vehicle if he didn't get out, all within a space of six minutes. This was not a standoff, as the government seems to have implicated and intimated in the brief. But the government is arguing that it was sequential. In other words, he refused to get out. He refused to comply. There were further movements of the defendant in the vehicle. That's what the government was talking about. Yes, right, and he testified. The further movement was because when he was hit by the vehicle, his phone fell down, and he was trying to reach for it. That was the further movement. Well, the officers didn't see that. And he kept moving his window up and down and having conversations with the officers. So our position is that the outrageousness allows for unreasonable finding by this court. Very well. Thank you, Mr. Rodriguez.  Thanks to both counsel for your argument. The case of United States v. Del Priori is submitted.
judges: SMITH, BUMATAY, Wu